**Loyal S. LEDET, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19045.**

United States Court of Appeals Fifth Circuit.

Jan. 2, 1962.

Rehearing Denied Feb. 13, 1962.

Francis A. Ledet, Houma, La., for appellant.

Brian S. Odem, Asst. U. S. Atty., Brownsville, Tex., Woodrow Seals, U. S. Atty., Houston, Tex., for appellee.

Before TUTTLE, Chief Judge, and POPE* and GEWIN, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal from the denial by the Trial Court of a motion for a new trial based on newly discovered evidence. This court has previously affirmed the conviction of appellant in Bourg and Ledet v. United States, 5th Cir., 286 F. 2d 124.

The essential facts as proved by the Government on the trial of appellant

---

* From the Ninth Circuit—sitting by designation.

and Bourg were that upon information from a reliable source, customs agents in Laredo, Texas searched an automobile admittedly belonging to Bourg as it stopped at a filling station apparently leaving Laredo at about 12:15 A.M. after the car had previously been seen crossing the border into Mexico and back across into the United States at approximately 10:40 P.M. The narcotics, 41 grams of Heroin Hydrochloride, were in a small paper bag underneath the right seat in the automobile in which Ledet had been sitting. Bourg was driving and admitted ownership of the automobile. On the front seat, covered with a white handkerchief, were two loaded .38 caliber revolvers. Following the arrest, both defendants denied knowing anything about the presence of the Heroin in the automobile. The two men lived in Houma, Louisiana, and had known each other for several years. Several days before their arrest, they had left Houma in Bourg's automobile and had driven 751 miles to Laredo, as they said, on a pleasure jaunt. On the trial, Bourg elected not to testify. Ledet took the stand and testified to the foregoing facts and to the effect that he left home with only about $25.00 and that Bourg agreed to pay all the expenses. On the two nights prior to their arrest they had visited several "night spots" in Nueva Laredo, across the border in Mexico, Ledet testified from the witness stand that he knew nothing of the heroin.

If the record disclosed only the foregoing facts, the case would be very similar to Guevara v. United States, 5th Cir., 242 F.2d 745. In that case, a package containing 50 marijuana cigarettes had been found on the floor board of Guevara's automobile between the driver's seat and the passenger's seat and a wooden club, admitted to have been fashioned as a weapon for defense, was found under Guevara's seat. This court held in that case that it was not possible under such circumstances for a jury to do more than speculate as to whether the cigarettes were there in the posses-

sion of Guevara or his passenger where they were both being prosecuted.

Here, however, the trial court admitted testimony by one of the customs agents that when Bourg was questioned out of the presence of Ledet he told the officers that he had started the trip with approximately $900.00 and when they asked him what had happened to it, he said he had given $800 to Ledet on the evening before their arrest. The agent testified further that they had then asked him to repeat his statement in the presence of Ledet, whereupon he was taken by the officers to the room where Ledet was being questioned and there he said to him, "You remember, I gave you $800 yesterday." The agent testified that to this comment by Bourg, Ledet shook his head and said, "No, you didn't give me $800."

■ In view of the fact that the hearsay statement of Bourg, testified to by the customs officer as binding on Ledet, was the only substantial fact distinguishing this case from Guevara v. United States, we think it only proper to state that the proof of guilt of the passenger, Ledet, in this case, was about as thin as would support a conviction. If the point had been properly made, we think it quite doubtful whether the testimony of the agent to the effect that Bourg said he had loaned $800 to Ledet would be admissible. The exception to the hearsay rule that permits introduction in evidence of a statement made by a witness tending to show that the defendant is guilty of a crime, if made in the presence of the defendant, is based on the theory that when an innocent man hears such a statement made about him, his natural reaction is to deny it. See 20 Am.Jur., Section 570 and cases cited. Simons v. United States, 9th Cir., 119 F.2d 539, cert. den., 314 U.S. 616, 62 S.Ct. 78, 86 L.Ed. 496. However, "if a statement prejudicial to a person's rights is made in his presence and he denies it, it is clear that there is no ground for invoking the doctrine of tacit admissions." 20 Am.Jur. 570, page 484. There is no exception to

the hearsay rule permitting the introduction of such testimony if the accused reacts in the manner in which Ledet responded here. Thus, we find that although the point has not heretofore been raised, damaging evidence was admitted against the appellant which should not have been presented for the consideration of the jury as to this defendant at all. This, of course, makes it even clearer that Ledet's conviction was based on very tenuous circumstantial evidence.

In this posture of affairs, Bourg, having been sentenced to six years in the penitentiary and Ledet to seven years, Bourg comes forward with an affidavit seeking to exculpate Ledet completely. In this affidavit he excused his prior failure to assume the responsibility for the purchase of the narcotics by his hope that he would avoid conviction if he also professed complete innocence. He now states in the affidavit, which is made the basis of the motion for new trial on behalf of Ledet, that he bought the narcotics after cautioning his source in Mexico not to let Ledet know anything about the transaction. He says that Ledet knew nothing about it and that he did not advance any money to Ledet. He also says that the two loaded revolvers were his and neither one belonged to Ledet.

■■ We must, of course, bear in mind the well known principle that ordinarily the granting or denial for a motion for a new trial on the basis of newly discovered evidence rests in the sound discretion of the trial court, and even where a clear case for the granting of a new trial might otherwise appear, the movant must ordinarily meet the following requirements:

1. The evidence must be discovered following the trial.

2. Facts must be alleged from which the court may infer diligence on the part of the movant to discover the new evidence.

3. The evidence must not be merely cumulative or impeaching.

4. The evidence must be material.

5. The evidence must be such that a new trial would probably produce a new result.

Weiss v. United States, 5th Cir., 122 F. 2d 675.

■ We must also bear in mind that it is not unusual for one of two convicted accomplices to seek to assume the entire fault and thus exculpate his co-defendant by the filing of a recanting affidavit. It goes without saying that not every such recanting affidavit requires a new trial of the other defendant for whose benefit it is produced. See Newman v. United States, 5th Cir., 238 F. 2d 861, but see also Martin v. United States, 5th Cir., 17 F.2d 973, 976, where this court made the following comment, which, although dictum, is sufficient to cause us to give most careful consideration in determining the proper treatment to be given where there is a full recantation bearing on its face no indication of the kind of double-dealing discussed in the Newman case: "In our opinion, it is the duty of the trial court to grant a new trial, where a witness at the original trial subsequently admits on oath that he has committed perjury or that he was mistaken in his testimony, provided such testimony related to a material issue, and was not merely cumulative."

■ We must conclude that under the peculiar circumstances of this case, involving as it does the ambiguous facts touching on possession; that is, the fact that total and complete possession by Bourg, the owner and driver of the automobile would be entirely consistent with Ledet's complete innocence or knowledge of, or dominion over, the narcotics, requires that a new trial be granted in order that the previously silent witness who knows most about the transaction may be given an opportunity to testify to facts that he has now asserted in the form of an affidavit.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.