Lavonne NEWSOM, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19842.

United States Court of Appeals Fifth Circuit.

Dec. 20, 1962.

Pete White, Fowler Roberts, Dallas, Tex., for appellant.

Robert E. Ward, Asst. U. S. Atty., Barefoot Sanders, U. S. Atty., William L. Hughes, Jr., Asst. U. S. Atty., Dallas, Tex., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

Lavonne Newsom and Travis Dale Linton were jointly indicted on two counts,[1] each charging the sale of 276 grams of marijuana to a special employee of the Bureau of Narcotics, United States Treasury Department. The jury returned a verdict finding Newsom guilty on each count; and the court sentenced him to imprisonment for five years.

Upon appeal Newsom urges that the district court erred: 1) in denying his motion for mistrial; 2) in admitting the testimony of the government chemist;

3) in denying his motion for judgment of acquittal; 4) in denying his motion and supplemental motion for new trial.

1. Motion for mistrial.

Each defendant having pleaded not guilty, the case was called for trial against both. During the questioning of the panel by the district judge, one of the prospective jurors, Sidney Edwin Anderson, "when asked if he knew either of the defendants, stated in open court and in the presence of the whole panel that he knew one of the defendants, and that he knew him when he, the prospective juror, Sidney Edwin Anderson, was with the Police Department, volunteering further, that under the circumstances of his knowledge, that he had handled him while he was in the Police Department."

The impaneling of the jury was recessed and, out of the presence of the jury, each of the defendants moved for a mistrial and objected to being tried before a jury selected from that panel on the ground that the statement was so highly prejudicial that the defendant could not get a fair trial.

The following colloquy ensued:

"MR. HUGHES (the Assistant United States Attorney in charge of the prosecution): Your Honor, I think that the Government would have to join in the Motion as to Travis Dale Linton. I think without question, it would be of such prejudice to him that he would be entitled to have the panel quashed.

"There is some reservation in my mind as to the Motion as to Lavonne Newsom, the answer not having been directed to him. I assume, however, if the Court grants one, that the Court might wish to consider both of them. Either way is all right as to that one, since it would be apparently tried together, as we have proceeded here today. It would mean one trial either way. If the

---

1. Charging violations respectively of Title 21 U.S.Code, § 176a, and Title 26 U.S.Code, § 4742(a).

Court granted it as to Linton, perhaps the Court would want to go ahead and grant the Motion as to Newsom. I think as to Newsom, the Motion is probably well taken, and yet there may be some question. If the Court wanted it resolved, we could give it some study, but I think without question it is good as to the Defendant Linton. I would find myself joining in that Motion. I think that that is well taken and since it is one trial, the Court may wish to pass both of them at this time, and then have the case called again before another panel.

"THE COURT: Well, you know, of course, that that means they would not be tried this month.

"MR. HUGHES: That is correct, Your Honor, but we are in the unfortunate position of having this same panel all month, and of course, if it's good as to the panel, it would be good all month.

"Now, I find really nothing as to the Motion on Newsom, and I think we might want to give that some further study, but I'm just thinking about the various alternatives that might be taken here.

"THE COURT: Now, if the Government wishes to go ahead with Newsom, I will overrule the Motion with reference to Lavonne Newsom. I will sustain it as to Travis Linton, but it depends on the attitude of the Government.

"MR. HUGHES: Well the Government would like to go ahead as to the Defendant Newsom.

"THE COURT: All right.

"MR. WHITE (Attorney for Defendant Newsom): May it please the Court, I would like to further urge my Motion with reference to Newsom, in that I think that the testimony will show that these two defendants were closely associated, that they are to be tried together, and I cannot see how that he would not be prejudiced by such a statement, Your Honor.

"THE COURT: I have overruled your Motion.

"MR. WHITE: To which we except, Your Honor."

The trial proceeded against Newsom alone.

 If the district court had permitted counsel to explain the extent to which Newsom's guilt or innocence depended on his knowledge that Linton was engaged in a criminal sale of marijuana, we think that it must have held that Anderson's statement was almost as prejudicial to Newsom as it was to Linton. While it seems to us probable that Newsom was prejudiced by Anderson's statement, so much discretion is vested in the district court as to whether to place a defendant upon trial before a jury selected from a particular panel, that we do not think a reversal would be warranted if this ruling stood alone.

## 2. Admissibility of testimony of Government chemist.

 The substance was delivered to Mr. Fenlaw, the special employee, in a brown paper bag, introduced as Government Exhibit No. 1. Fenlaw and Agent English of the Narcotics Bureau placed their initials on the bag, and Agent English kept it in view from the time of its delivery to Fenlaw until it and its contents were placed in a wrapper on which English also placed his initials, and then delivered it to the chemist. The chemist initialed the wrapper and testified about the substance contained in the wrapper, introduced as Government Exhibit No. 2. Clearly, the substance was sufficiently traced notwithstanding the chemist's inability to identify the brown paper bag.

## 3. Motion for judgment of acquittal.

In addition to the chemist, only two witnesses testified for the government— Fenlaw, the "special employee" referred to in the indictment, and Agent English.

Fenlaw testified that he had never been arrested for narcotics, but had smoked

marijuana and had been in a narcotics institution in 1958. He had occasion to work with Agent English "on a matter which started out with Judy Ormond." He had known Judy Ormond for five or six years. On December 14, 1961, he had a telephone call from her and thereafter contacted Agent English. He and Agent English went to Guthrey's Club, a dance hall on Corinth Street in Dallas, Texas. There he had a conversation with Judy Ormond, and they stayed at the dance hall from around 11:00 P.M. until midnight. When they left, they went to "Waffle House Number 1" on Gaston Avenue, arriving there about 1:00 A.M. on December 15. He and Agent English sat down in a booth and ordered coffee. At about 1:30 A.M. Newsom and Travis Linton walked in. Fenlaw had met Linton but had not met Newsom. Linton spoke to Fenlaw, calling him "Hammy," his nickname, "and asked me how everything was going or the time of day or something like that, and asked me if I would join him in a back booth, he wished to discuss something with me." They went to a back booth, while Newsom sat down at the booth with Agent English.

After Fenlaw's conversation with Linton, he went back to Agent English. Newsom followed Linton out to the automobile in which they had arrived. Agent English gave Fenlaw a "quick search" and handed him $125.00 of government money. Fenlaw went on to the automobile in which Newsom was then seated behind the steering wheel, with Linton in the middle of the front seat. Fenlaw got in on the right-hand side next to Linton. Linton reached under the right-hand seat, picked up the brown paper bag, and handed it to Fenlaw, who in turn handed Linton the $125.00

Fenlaw testified in general terms that all three occupants of the automobile engaged in a conversation concerning the marijuana. When asked to relate the conversation, he testified, "I don't remember word-for-word." He never did testify to any specific thing said to or by Newsom. Linton told him "there was a pound there, and if there was any

shortage, let him know." He did not contact Newsom further, but did go to see Linton about a shortage in the marijuana—"It was about a quarter short." Linton didn't make it all good, but did give him some more marijuana. It was not until February 1, 1962, two and a half months after the transaction of December 15, that a warrant was issued for the arrests of Linton and Newsom.

Agent English testified that while he and Newsom were seated together in the waffle house, he engaged Newsom in conversation "designed to determine how much he might have to do with the transaction which, as far as I knew, was impending * * * but his only comments were, I believe, something relative to the weather * * *." Agent English did not observe whether Newsom was drinking or not. He observed the special employee in the automobile with Linton and Newsom, and knew that they were in the automobile for "several minutes."

The defendant Newsom testified as a witness in his own behalf. He was 28 years of age, a machinist by trade employed at a machine shop in Dallas. He was close with Linton's brother, and through him had met Linton about five years before December 1961. On the night of December 14, 1961, he had been to Guthrey's Club about three hours and had had several beers. While there, Linton approached him and asked to borrow his car. He refused that, but told Linton he would take him where he wanted to go. They drove by Linton's house and then to the waffle house.

Newsom denied any knowledge of any marijuana transaction. He testified that the special employee was in the car with him and Linton "not over a minute," that he saw Linton reach under the seat of the car and get something, but did not hear him say that it was a pound of marijuana and did not know that it was marijuana. He denied having paid any attention to the conversation between the special employee and Linton, testifying, "I seen a transaction but I couldn't swear

that it was money or marijuana or anything else."

A character witness testified that Newsom worked for him for several years, he entrusted large sums of money to Newsom, and his reputation for truth and veracity was good. The Government did not attack Newsom's reputation or character.

■ The evidence was thus clear that it was the co-defendant Linton who actually sold and delivered the marijuana to Fenlaw and with whom Fenlaw had his subsequent dealings about the shortage. Fenlaw's testimony about the conversation and occurrence while he and Linton and Newsom were together in Newsom's car is the only direct evidence of Newsom's guilty knowledge of the marijuana. But for that testimony, the circumstances would be equally consistent with Newsom's explanation that he was simply transporting Linton as a favor. Fenlaw's testimony as to that occurrence and conversation was in such vague and general terms insofar as it concerned fastening guilty knowledge of the marijuana upon Newsom that there might be considerable doubt whether the jury could properly and reasonably find that the evidence excluded every reasonable hypothesis except that of guilt.[2] Certainly the proof of guilty knowledge on the part of Newsom was extremely weak.

4. Motion for new trial.

■ On June 20, 1962, within five days after he was convicted and sentenced, Newsom filed a motion for new trial. On June 28, he filed an amended or supplemental motion based on claimed newly discovered evidence. To that motion was attached a certified copy of the proceedings, also on June 20, after Linton had entered a plea of guilty to the indictment. When asked by the court whether there was anything he wanted to say, Linton replied, inter alia: "I just feel sorry that it's happened because I've brought in some innocent people into it and gotten them hurt too. My friend Newsom, he wasn't—he had no knowledge of what I was doing that night and I got him in trouble because of it, and I'm sorry for it."

Attached to the supplemental motion was also an affidavit from Linton in which he swore:

"I wish to state that although Lavonne Newsom was with me at the time this transaction on or about December 15, 1961, he knew nothing about my arrangement to sell the marijuana, and had nothing to do with it. He received none of the money involved, he had no marijuana, he made no arrangements to help me sell the marijuana.

"We had been together earlier on the night in question, Lavonne Newsom had been drinking, I asked him to lend me his car, he would not do this, I then asked him to take me to meet some people, he agreed to do this, but did not know the purpose of the meeting. We stopped by my place, and I got the marijuana without his knowledge and put it up under the seat, we met the person to whom I later sold the marijuana, and if Newsom ever knew anything about this transaction he first learned of it at the time I delivered it to the officer making the purchase. It is entirely possible that he did not even know about it at that time as he was drinking, and the whole transaction was very quickly handled.

"I have told the Court at the time of my trial that Lavonne Newsom was innocent, and at the time of my arrest, to the best of my knowledge, I told the arresting Federal officers that Lavonne Newsom had nothing

2. The test by which this Court reviews the sufficiency of circumstantial evidence to sustain a conviction. Hamilton v. United States, 5 Cir., 1962, 304 F.2d 542, 545, and cases there collected.

to do with this, and was not guilty of any crime."

An affidavit from Fred Bruner, Esquire, Linton's attorney, was also attached in which Mr. Bruner testified:

"At the time of the trial of the said co-defendant, LAVONNE NEWSOM, the said TRAVIS DALE LINTON was requested to testify on behalf of the co-defendant, the said LAVONNE NEWSOM, at which time the said TRAVIS DALE LINTON refused to testify on behalf of the said LAVONNE NEWSOM in that he could not testify without incriminating himself."

The record reveals that at the beginning of Newsom's trial, Linton was sworn as a witness at the request of both the government and the defendant Newsom, but that Linton was never placed on the stand.

Seldom indeed will this Court reverse a district court for refusing to grant a new trial.[3] The evidence in this case of Newsom's guilty knowledge of the marijuana was weak. His trial before a jury selected from a panel which had heard Anderson's statement may not have been entirely fair. Newson could not avail himself on his trial of the testimony of Linton. Another jury may reasonably find Linton's testimony sufficiently credible to raise a reasonable doubt as to the truth and meaning of the testimony of the special employee, and hence of the defendant's guilt, or it may not so find. Every practicable precaution should be taken to insure that the verdict really speaks the truth, for if it does not an innocent man may be imprisoned for years. We hold, therefore, that, under the peculiar circumstances of this case, the district court erred in denying the defendant's motion for new trial.

Reversed and remanded.

3. Griffin v. United States, 1949, 336 U.S. 704, 708–709, 69 S.Ct. 814, 93 L.Ed. 993; Harrison v. United States, 5 Cir., 1951, 191 F.2d 874, 876; Lyles v. United States, 5 Cir., 1960, 279 F.2d 358; United

States v. Consolidated Laundries Corporation, 2 Cir., 1961, 291 F.2d 563; Mejia v. United States, 9 Cir., 1961, 291 F.2d 198.