**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George B. RILEY, Defendant-Appellant.**

**Nos. 76–1039, 76–1382.**

United States Court of Appeals, Fifth Circuit.

Dec. 20, 1976.

Rehearing Denied Jan. 14, 1977.

---

Arthur J. Ranson, III, John M. Robertson, Orlando, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., A. Thomas Mihok, Harrison T. Slaughter, Jr., Asst. U. S. Attys., Orlando, Fla., for plaintiff-appellee.

Before COLEMAN, CLARK and TJOFLAT, Circuit Judges.

COLEMAN, Circuit Judge:

George B. Riley, President of the City National Bank of Cocoa, Florida, was convicted of unlawfully receiving a fee and commission for a loan from that bank, 18 U.S.C. Section 215.[1] He contends that the

---

1. § 215. Receipt of commissions or gifts for procuring loans

Whoever, being an officer, director, employee, agent, or attorney of any bank, the deposits of which are insured by the Federal Deposit Insurance Corporation, of a Federal intermediate credit bank, or of a National Agricultural Credit Corporation, except as provided by law, stipulates for or receives or consents or agrees to receive any fee, commission, gift, or thing of value, from any person, firm, or corporation, for procuring or

trial court erred in refusing to grant a motion for a new trial on the basis of newly discovered evidence, or alternatively that the trial court erred in refusing him permission to conduct post-verdict interviews of the jurors. We affirm.

Viewed in the light favorable to the verdict, the circumstances surrounding the making of the loan are as follows: In the spring of 1972 a group of investors, composed of R. E. Carrigan, Jr., R. S. Bergen, Gary G. Martin, and Garnett Umberger, was formed for the purpose of purchasing a 3,000 acre tract of land located near the Bee Line Expressway in Orange County, Florida, and selling it for an expected profit of $1,500,000. Another individual, Alfred Guiliani, was to receive a percentage of the net profits for helping to arrange the financing. In making a $50,000 deposit on the land, one of the investors, Bergen, put up his share in cash and the remainder, $41,666.67, was to be borrowed from the City National Bank of Cocoa. Mr. Riley, the president, at the suggestion of Guiliani, was contacted by Carrigan concerning the loan. After one or more meetings with the investors concerning the transaction, Riley agreed to make the loan, in exchange for which he was to receive 15% of the expected profits. Testimony at trial was conflicting as to whether the 15% was demanded by Riley or was merely offered to him.

The loan was granted and the deposit on the property was made. The loan itself was uncollateralized but was supported by a promissory note in favor of City National in the amount of $41,666.67, signed by Martin, Umberger, and Guiliani. The note was not signed by Carrigan, who was considered a bad credit risk by City National. Carrigan did sign a promissory note in favor of Guiliani, a non-investor. The $41,666.67 loan from City National was repaid in full, plus interest, by a check dated December 15, 1972, sent to Riley by Carrigan.

Resale of the property at the anticipated profit was delayed, however, due to default of an expected purchaser.

In lieu of 15% of the anticipated profit, Carrigan, in December, 1972, gave Riley his promissory note for $15,000, which was never paid.

Riley admitted approving the loan and admitted that he was to receive a 15% fee. He claimed, however, that his intent was not to make a loan from City National but to participate the loan to the First American Bank of North Palm Beach. A participation, in one form, arises when a bank chooses not to make a requested loan but contacts a second bank to request that it lend the funds to the customer. If the second bank, the participating bank, agrees, the originating bank advances the amount requested to the customer on behalf of the participating bank. Subsequently, the originating bank is reimbursed in full by a transfer of funds from the participating bank. Customarily, the originating bank services the loan even though the loan is considered an asset of the participating bank. The records of both banks would indicate the participation.

Riley testified that during one of the meetings with the investors he telephoned Mr. Robert Zammit, president of the First American Bank of North Palm Beach, and received a verbal participation commitment for 100% of the loan. At trial Zammit did not recall either the conversation with Riley or the commitment. Furthermore, Zammit testified that in 1972 the First American Bank had an unsecured loan limit of $20,000, with loans for a larger amount being subject to the approval of another officer or of the Board of Directors.

In his grand jury testimony, Riley also said that he advised the investors that, since it would be illegal for him to accept a fee for loaning money from his own bank, the loan would have to be participated.

endeavoring to procure for such person, firm, or corporation, or for any other person, firm, or corporation, from any such bank or corporation, any loan or extension or renewal of loan or substitution of security, or the pur-

chase or discount or acceptance of any paper, note, draft, check, or bill of exchange by any such bank or corporation, shall be fined not more than $5,000 or imprisoned not more than one year or both.

**240**

However, neither Carrigan nor Guiliani could remember being told that the loan would have to be participated out.

The loan was not so participated. City National Bank personnel testified that there were no bank records indicating that the loan was participated out; that the $41,666.67 loan was carried on the liability ledger of Guiliani; and that notice of this loan was contained in the June 8, 1972, report to the Board of Directors. Joyce Henley, Riley's secretary, did testify that the loan was prepared in the manner of a participation but she did not recall being told to participate the loan. The loan clerk, Sue Jenkins, testified that she remembered the loan but that it had not been participated and she was not told by any member of the staff to participate it. A federal bank examiner testified that in September, 1972, Riley had told him that the loan was front money for a condominium project, never mentioning his personal interest or that the loan had been participated.

■ On this state of the record, the evidence was sufficient to support the conviction. After being found guilty, Riley filed a motion for permission to interview jurors. This was denied without a hearing as being merely a "fishing expedition". Subsequently, he filed a motion for a new trial on the ground of newly discovered evidence. At a hearing on that motion, appellant offered the testimony of Fran Diaz, loan trainee clerk in the commercial loan department of City National Bank at the time of the $41,-666.67 loan, and Van E. Beardon, Assistant Cashier and Loan Officer of the City National Bank in May of 1972. At the conclusion of the hearing, the trial court ruled that the evidence probably would not produce a different result and, consequently, denied the motion. On appeal, Riley claims that the denial of these motions was error and that a new trial should have been granted.

■ It is axiomatic that the grant or denial of a motion for a new trial rests in the sound discretion of the trial court, *Ledet v. United States,* 5 Cir. 1962, 297 F.2d 737, and a denial will not be reversed with-

out a showing of an abuse of that discretion, *Hudson v. United States,* 5 Cir. 1967, 387 F.2d 331. A new trial due to after-discovered evidence should be granted only with great caution. *Weiss v. United States,* 5 Cir. 1941, 122 F.2d 675; *Lacaze v. United States,* 5 Cir. 1968, 391 F.2d 516, 522. To prevail, the movant must meet all of the following requirements: (1) the evidence must have been discovered following the trial; (2) facts must be alleged to show the moving party has been diligent in discovering the new evidence; (3) the evidence must be material and not cumulative or impeaching; and (4) the evidence must be such that a new trial would probably produce a new result. *Weiss v. United States,* 122 F.2d at 691; *United States v. Crane,* 5 Cir. 1971, 445 F.2d 509, 519. Failure to meet any of the four prerequisites requires denial of the motion. *United States v. Rachal,* 5 Cir. 1973, 473 F.2d 1338, 1344.

■ The testimony of the loan department trainee is clearly cumulative. Mrs. Diaz testified that she had worked with the $41,666.67 loan; that she did not remember anyone telling her it was to be a participation; that she was familiar with participations but did not handle them; and that she believed she had seen Riley's secretary preparing "a loan" in the manner of a participation but that she was not sure it was the loan in question. None of this testimony adds to Miss Henley's that she thought she was preparing a participation file though she did not actually do so and did not remember being so instructed. Testimony which is merely cumulative is an insufficient basis for a new trial. *United States v. Dara,* 5 Cir. 1970, 429 F.2d 513. The testimony of this witness added nothing new to the testimony of Miss Henley.

Mr. Beardon's testimony was that he picked up a loan package for R. E. Carrigan in late April or early May of 1972 at Mr. Riley's request. He believed this to be the loan in question since he remembered seeing a financial statement of Gary G. Martin and a note for "some forty odd thousand dollars". He did not however know if the note and financial statement pertained to

the same loan. Beardon also testified that he had questioned whether Mr. Riley was making another loan to Carrigan and was told that the package contained a loan for a bank in the Lauderdale .area.

Riley did not recall the conversation and there is nothing in this testimony which adds to Riley's own. There is not enough here, either new, material, or noncumulative, to require a new trial.

■ Although appellant urges that the testimony of these two witnesses is critical to the issue of intent, there is nothing in the testimony of either which could reasonably be expected to change the outcome of the trial. Riley actually received the fee; City National Bank carried the loan on its books, which was known to Riley since it appeared in the June report to the Board of Directors; Bob Zammit, President of First American Bank of North Palm Beach, had no recollection of a phone call requesting participation and could not have agreed to a participation on such a loan without approval of the Board of Directors or another bank officer; the recipient of the loan were unaware it was to be participated; no bank employee remembered receiving instructions that the loan was to be participated; and statements made by Riley to a bank examiner regarding the loan indicated no participation. The likelihood of changing a jury's decision must rise considerably above the level of speculation in order to justify a new trial. *Ross v. Texas,* 5 Cir. 1973, 474 F.2d 1150.

Furthermore, while appellant claims he was unable to locate Mrs. Diaz and was unaware of the conversation with Mr. Beardon, Mrs. Diaz was an employee of appellant for nineteen months; she had been in the Cocoa area since July, 1975, and during this time had gone back to the bank to see several of her friends there. Mr. Beardon had been an employee of City National for 4 years and was an employee of Mr. Riley at the Merritt Square Bank during the last months of 1975. As a potential witness, Mr. Beardon was known to Mr. Riley and

was available at trial. He had been a loan officer at City National at the time of the loan and would have been a logical person to question.

We must hold that all of the elements necessary for a new trial were not shown and the trial court did not abuse its discretion in refusing to order a new trial.

*Post Verdict Interview of Jurors*

Appellant also cites as error the denial of his motion for permission to conduct a post-verdict interview of the jurors. Riley submitted a 5-point questionnaire to be presented to the jurors attempting to elicit information as to whether there was undue influence present in the jury room or whether the jury had been influenced by any extraneous, prejudicial matters. In a supporting memorandum, appellant stated no grounds alleging any impropriety other than "there is very substantial evidence in this case which admits to the innocence of the defendant". This motion was denied without a hearing, the trial court concluding that appellant was seeking a "fishing expedition" as to how each of the jurors arrived at his or her decision.

■ In his brief appellant also points to a lapse of several days between selection of the jury and presentation of the government's case [2] as an opportunity for the jury to be influenced by trial publicity. However, prospective jurors were thoroughly questioned on voir dire as to whether they had been influenced by pre-trial publicity; they were questioned as to their ability to render an impartial verdict; and they were questioned with regard to their ability to apply the law as instructed to the evidence presented. Specific questions requested by appellant's counsel were also presented to the jurors. At several times during the trial the Court advised the jurors not to discuss the case among themselves or with others, not to read, view, or listen to news stories about the case, and not to formulate any opinion prior to commencing their deliberations.

2. The jury was selected on December 1, 1975; the government began its presentation December 4, 1975; a verdict was delivered December 9, 1975.

242

Historically, interrogations of jurors have not been favored by federal courts except where there is some *showing* of illegal or prejudicial intrusion into the jury process. In each case submitted to this Court supporting such an inquiry into the deliberative process, specific instances of misconduct were shown by testimony or affidavit. A party attacking the integrity of a jury on the ground of a juror's prejudice must prove prejudice by a preponderance of the evidence. *United States v. Cashio,* 5 Cir. 1970, 420 F.2d 1132, *cert. denied,* 397 U.S. 1007, 90 S.Ct. 1234, 25 L.Ed.2d 420. There was no such showing, or even allegation, of impermissible influence here; appellant failed entirely to meet his burden. Courts simply will not denigrate jury trials by afterwards ransacking the jurors in search of some ground, not previously supported by evidence, for a new trial. The trial court judge properly dismissed the motion.

The Judgment of the District Court is AFFIRMED.