UNITED STATES of America, Plaintiff,

v.

Fernando PEREZ–PAREDES, et al., Defendants.

No. 87–0301–CR.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 20, 1988.

John O'Sullivan, Asst. U.S. Atty., Miami, Fla., for U.S.

Michael P. Joseph, New York City, for Perez–Paredes.

Arturo Alvarez, Miami, Fla., for Romon Capalleja.

Joel Kaplan, Miami, Fla., for More.

Joel Rosenthal, Miami, Fla., for Vergara.

## MEMORANDUM OPINION AND ORDER DENYING POST TRIAL MOTIONS

SPELLMAN, District Judge.

This CAUSE comes before the Court on Defendants', FERNANDO PEREZ–PAREDES, YOLANDA MORE, and MIGUEL VERGARA, Post Trial Motions.

FACTUAL HISTORY:

On the night of April 30, 1987, a special agent responded to a call from Metro Dade Narcotics for the smell of ether emanating from a residence located at 4316 S.W. 134 Place, Miami, Florida. Ether is an ingredient used in the manufacture of cocaine. Several hours later, two Latin males, later identified as Fernando Perez–Paredes and Miguel Vergara, and one Latin female, later identified as Yolanda More, departed from the residence. Perez–Paredes and More departed in one car and Vergara in another. The police, having been advised of the happenings, stopped the cars and arrested the three defendants. A substantial sum of money was found in the possession of More.

Thereafter, the police returned to the residence and knocked on the door. Defendant Capalleja, who was still in house, opened the door and upon doing so, the smell of ether was detected from inside. Capalleja was then arrested and the police entered the house to make a protective sweep for other people as well as out of a concern for the highly combustible ether. Approximately one hour later, officers arrived at the residence with a signed search warrant. Inside the house a cocaine laboratory was found in one of the bedrooms as well as a five gallon can of ether and a quantity of cocaine in a closet.

PROCEDURAL HISTORY:

On May 8, 1987, the grand jury returned a two count indictment against four defendants: ORLANDO RAMON CAPALLEJA, YOLANDA MORE, FERNANDO PEREZ–PAREDES and MIGUEL VERGARA. The two count indictment charged each with I) knowingly and intentionally manufacturing and possessing with the intent to distribute a quantity of cocaine in excess of five kilograms in violation of 21 U.S.C. section 841 (a)(1), as amended by the Anti– Drug Abuse Act of 1986, Public Law No. 99–570, effective October 27, 1986, and 18 U.S.C. section 2 and II) knowingly and intentionally conspiring to commit an offense against the United States in violation of 21 U.S.C. section 841(a)(1), as amended by the Anti–Drug Abuse Act of 1986, Public Law No. 99–570, effective October 27, 1986.

The trial began on August 11, 1987. On August 12, 1987, Capalleja plead guilty to both counts. On August 14, 1987, after the trial ended, the jury returned guilty verdicts against the remaining defendants on each count. Defendants FERNANDO PEREZ–PAREDES and YOLANDA MORE moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure on the grounds of newly discovered evidence. Defendant MIGUEL VERGARA moved for a judgment of acquittal in arrest of judgment pursuant to Rule 29(c), 33, and 34 of the Federal Rules of Criminal Procedure. For the following reasons, all motions are DENIED.

MOTIONS FOR NEW TRIAL:

After the remaining defendants were convicted, defendant Capalleja agreed to provide by affidavit exculpatory testimony as to More and Perez–Paredes. Accordingly, defendants More and Perez–Paredes have moved for a new trial on the grounds of this "newly discovered evidence." According to Capalleja's affidavit (i) Perez– Paredes had nothing to do with leasing the house and Perez–Paredes had no way of knowing that the residence was used as a cocaine conversion laboratory, (ii) More posed as Capalleja's wife when he leased the residence only as a favor because on

previous occasions owners would lease only to a couple; she did not do so as part of a scheme to establish a site for a cocaine laboratory and, in fact, did not know the residence was used for such purpose, (iii) More called Capalleja on the night of April 30, 1987 to advise him that she would be coming over to meet her boyfriend, Perez–Paredes, (iv) neither More nor Perez–Paredes knew that a cocaine conversion process was in operation at the residence, (v) they remained mostly in the master bedroom, out of sight of the cocaine processing, and (vi) after spending a long time in the bedroom, they came out, spoke briefly to Capalleja in the living room, and then left the house.

■ It is within the sound discretion of the trial court whether to grant a motion for a new trial. *U.S. v. Martinez*, 763 F.2d 1297, 1312 (11th Cir.1985). A motion will not be granted unless a defendant can establish *all* of the following:

(1) the evidence must be discovered following the trial; (2) the movant must show due diligence to discover the evidence; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material to issues before the court; and (5) the evidence must be of such a nature that a new trial would probably produce a new result.

*U.S. v. Hobson*, 825 F.2d 364, 366 (11th Cir.1987) (quoting *U.S. v. Bollinger*, 796 F.2d 1394, 1401 (11th Cir.1986)); *Valladares v. U.S.*, 833 F.2d 1543 (11th Cir.1987). Defendants More and Perez–Parades fail to satisfy elements one, three, and five.

■ First, Capalleja's affidavit is not newly discovered. Courts addressing whether exculpatory testimony of a co-defendant which was not elicited during trial but subsequently becomes available have generally held that it is not newly discovered evidence. *See, e.g. U.S. v. Metz*, 652 F.2d 478 (5th Cir. Unit A 1981); *McAteer v. U.S.*, 148 F.2d 992 (5th Cir.1945); *U.S. v. Diggs*, 649 F.2d 731 (9th Cir.1980). For example, in *U.S. v. Metz*, defendant Metz moved for a new trial based on newly discovered evidence after being convicted of a drug conspiracy offense. Metz argued

that the exculpatory affidavit of convicted co-conspirator, Schiller, who was tried jointly with Metz, was newly discovered and warranted a new trial. Schiller was unable to testify at their joint trial because he invoked the Fifth Amendment. After trial, Schiller expressed his willingness to give testimony which would exculpate defendant Metz as a co-conspirator. In particular, Schiller would testify that Metz knew nothing of the cocaine and knew nothing of the cocaine deal and was not at the house on the day in question. The court stated that Metz had not "cleared the hurdle of showing that the evidence was unknown to him at the time of trial," because even though Schiller was unavailable to testify on behalf of Metz at their joint trial, Metz himself was not precluded from testifying on his own behalf. *Metz*, 652 F.2d at 480. He could have offered basically the same testimony as Schiller was willing to testify to.

Like Metz, defendants Perez–Paredes and More rely on *Ledet v. U.S.*, 297 F.2d 737 (5th Cir.1962) and *Newsom v. U.S.*, 311 F.2d 74 (5th Cir.1962), for the proposition that testimony newly available is, in fact, newly discovered. *Metz* rejects this argument. 652 F.2d at 480. In both *Ledet* and *Newsom* the respective defendants' motions for new trial on the basis of newly discovered evidence were granted. The newly discovered evidence consisted of exculpatory testimony of a witness who came forward to testify after being adjudicated guilty of the same crime as the defendants. Both *Ledet* and *Newsom* appear to be an anomaly in the case law. What seems to have justified the outcome in those cases was "the ambiguous fact situation of *Ledet* or the sentencing situation in *Newsom.*" *Id.* *Metz* narrowly restricts both *Ledet* and *Newsom* to their own facts and, as indicated, rejects the notion that newly available evidence is synonymous with newly discovered evidence for purposes of a motion for a new trial. *Id.*

Second, Capalleja's affidavit provides testimony that is merely cumulative. When More took the stand at trial, she testified that neither she, Perez–Paredes, nor Vergara were involved in the cocaine transac-

tions. Specifically, More testified to the following relevant facts: (i) that she did not live at the residence in question, but only posed as Capalleja's wife when he went to rent the house as a favor to him because as a single man he had a hard time being approved as a tenant; (ii) that Perez–Paredes was her boyfriend and because their relationship was deteriorating she was planning to leave him, (iii) that to raise cash she sold some jewelry to a jeweler for $6800, (iv) that she agreed to meet with Perez–Paredes on the night in question at Capalleja's house, (v) that at Capalleja's house she and Perez–Paredes remained most of the evening in the bedroom trying to resolve their domestic disputes, (vi) that at no time did she partake in or even view the cocaine conversion operation. ·Capalleja's proposed exculpatory testimony would be merely cumulative to that of More, especially as it relates to defendant More because she took the stand in her own behalf.

The defendants argue that because Capalleja has not been sentenced his credibility will be enhanced and therefore his testimony will not be cumulative to More's. This court disagrees. Regardless of when Capalleja testifies, he would be at risk of the same perjury charge if he lies and therefore, the distinction made by the defendants is really a distinction without a difference. The defendants additionally argue that Capalleja's testimony would not be cumulative to More's because it would be the only testimony introduced at trial from a witness who admits involvement in and knowledge about the cocaine, who actually resides at the residence in question, and who was not a defendant in the case and who could not be impeached by showing that the outcome of the case would affect his liberty. This argument makes little sense. Carried to its logical conclusion, defendants argue that any time a

different person testifies to the same facts as another person the testimony of the two is not cumulative. Defendants confuse "weight" duly accorded testimony with the definition of cumulativeness.[1] The defendants have not shown the court any cases wherein identical testimony is held not to be cumulative merely because the weight that might be accorded one is different than the other.

Finally, defendants have failed to show that Capalleja's testimony would result in a judgment of acquittal. The fact that Capalleja's testimony is cumulative seriously undermines its ability to change the outcome of the trial. *Cf. U.S. v. Carlin,* 573 F.Supp. 44 (N.D.Ga.1983) (where proposed newly discovered evidence mirrored testimony already adduced at trial, a judgment of acquittal based on this alleged newly discovered evidence was unlikely); *U.S. v. Gonzalez,* 661 F.2d 488, 495–96 (5th Cir. Unit B 1981) (same proposition). Accordingly, these defendants' motions are denied.

MOTION FOR JUDGMENT OF ACQUITTAL IN ARREST OF JUDGMENT:

Defendant Vergara moves for a judgment of acquittal in arrest of judgment[2] on the alleged insufficiency of evidence to sustain a conviction. The proper standard on such a motion is whether there is "substantial evidence, taking the view most favorable to the Government, to support" the verdict of the jury. *Glasser v. U.S.,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *U.S. v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982); *see also*

1. *See, e.g. U.S. v. Riley,* 544 F.2d 237 (5th Cir. 1976) (where testimony of witness adds nothing new to testimony already elicited at trial, such testimony is merely cumulative); *U.S. v. Bollinger,* 796 F.2d 1394 (11th Cir.1986) (same proposition).

2. Vergara's motion for judgment of acquittal in arrest of judgment was filed September 28,

1987. Such motion was denied on October 2, 1987. Thereafter, on November 16, 1987, *nunc pro tunc* to October 2, 1987, this Court granted defendant Vergara's motion to reconsider the Court's denial of his motion for judgment of acquittal, and in so doing vacated teh October 2, 1987 order.

**263**

*U.S. v. Henderson,* 693 F.2d 1028, 1030 (11th Cir.1983) (quoting *Bell* for standard of review on motion for acquittal based on insufficiency of evidence).

Vergara argues that his mere presence at the house where the cocaine processing was taking place is not enough to sustain a conviction. He argues that, at most, the inferences to be drawn from the facts could support a conclusion that Vergara knew that a crime was afoot.

■■■ Vergara relies primarily on *U.S. v. Rackley,* 742 F.2d 1266 (11th Cir.1984), for the proposition that he, like one of the defendants in *Rackley,* was merely present where the cocaine transactions were taking place and mere presence is insufficient to support a conviction. True, while mere presence alone is insufficient, *Rackley,* 742 F.2d at 1271, presence is a material and probative factor which the jury may consider. *U.S. v. Kincade,* 714 F.2d 1064, 1065 (11th Cir.1963). As the Eleventh Circuit recently stated:

> [i]t is not disputed that mere presence, standing alone, is not sufficient to convict a person of a conspiracy and presence and association with others at the time of the commission of an offense is not sufficient to convict such person. However, presence and association are factors to be considered with other evidence in evaluating the "totality of the circumstances" by which a jury can determine whether a defendant is guilty.

*U.S. v. Bell,* 833 F.2d 272 (11th Cir.1987) (citing *U.S. v. Blasco,* 702 S.2d 1315 (11th Cir.1983)). Something other than mere presence, "some nexus between the accused and the contraband," must exist. *Rackley,* 742 F.2d at 1272.

In *Rackley,* Rackley's motion for a new trial was denied where, in addition to presence, there was dominion and control of traces of cocaine on Rackley's truck which the court found sufficient to sustain the conviction for both possession and conspiracy. 742 F.2d at 1272. Rackley's co-defendant, Crosbey's, motion was granted, however, where there was nothing but mere presence at the place where cocaine was found. Here, there is more evidence

presented linking Vergara to the possession and manufacture of cocaine than there was in *Rackley.* The pertinent facts established at trial are as follows: (1) the defendant Vergara drove co-defendant More to the residence in which the cocaine processing plant was located, (2) Vergara arrived at the residence prior to 9:00 p.m. and remained there until approximately 2:00 a.m., (3) Vergara was allowed into the residence by co-defendant Capalleja, (4) the residence reeked of ether, (5) cocaine was drying throughout the time the defendant Vergara was in the residence, (6) the drying of cocaine resulted in an overwhelming smell of ether, (7) prolonged exposure to ether causes severe headaches and nausea, (8) Vergara left the house and a short distance down the street met with defendants More and Perez–Paredes, and (9) Vergara, his clothing, and his automobile all reeked of ether.

Vergara was in the residence where the cocaine conversion plant was located. It is seemingly improbable that Capalleja would allow Vergara into the residence/processing plant if Vergara was not participating in the processing of the cocaine. Vergara remained in the house for approximately five hours during the late evening and early morning. These are the hours when there would be less normal activity in a residential area. He subjected himself to the intense smell of ether for a prolonged period which one would not ordinarily do because ether makes one nauseous and causes headache.

While no one factor standing alone (in addition to mere presence) might be sufficient to support Vergara's conviction, certainly all of them in the "totality of circumstances" provide a sufficient nexus between Vergara and the contraband. Here, the "government [has] provided ... [an] evidentiary basis other than [defendant's] presence ... from which an inference of conspiratorial participation could be drawn." *U.S. v. Pintado,* 715 F.2d 1501, 1505 (11th Cir.1983). The court is comfortable in finding that "the jury properly could have found beyond a reasonable doubt that [Vergara was] not present for

some innocuous reason, but [was] a part of the overall and well orchestrated conspiracy to [distribute cocaine]." *U.S. v. Blasco,* 702 F.2d 1315, 1332 (11th Cir.1983). As in *Blasco,* the circumstantial evidence adduced at trial was sufficient to sustain Vergara's conviction on both counts. *Accord U.S. v. Bell,* 833 F.2d 272 (11th Cir.1987). Accordingly, Vergara's motion is denied. CONCLUSION:

In sum, defendants MORE and PEREZ-PAREDES have failed to establish the requisite showing for a new trial based on newly discovered evidence. Similarly, defendant VERGARA has not convinced the Court that there was not substantial evidence to support the verdict. Accordingly, it is hereby

ORDERED AND ADJUDGED that all post trial motions are DENIED.