**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert RACKLEY, Randall T. Crosby,
Defendants-Appellants.**

No. 82–6020.

United States Court of Appeals,
Eleventh Circuit.

Feb. 13, 1984.

Bruce E. Wagner, P.A., Fort Lauderdale, Fla., for Rackley.

Ernest A.J. Kollra, Fort Lauderdale, Fla., for Crosby.

Lurana Snow, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY, HATCHETT and ANDERSON, Circuit Judges.

HATCHETT, Circuit Judge:

Appellants, Robert Rackley and Randall T. Crosby, appeal their convictions for possession of cocaine with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2, and conspiracy to distribute cocaine in violation of 21 U.S.C.A. § 846.[1] We affirm Rackley's convictions, but reverse Crosby's convictions.

---

1. The opinion in this case reported as *United States v. Rackley, et al.,* 724 F.2d 1463 (11th Cir.1984), is withdrawn and this opinion substituted.

The applicable statutes are:
18 U.S.C.A. § 2.
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
21 U.S.C.A. § 841.
(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

## I. FACTS

On July 7, 1982, United States Customs Group Supervisor Robert Guthrie, of the Florida Joint Task Group, informed Special Agent David McAndrews that an anonymous telephone caller informed him that drugs were being off-loaded from a boat at 714 Northeast 20th Avenue (house), in Fort Lauderdale, Florida. Agents McAndrews, Bruckner, and Heitschmidt proceeded to the house and "camped out" on the next-door neighbors' property in order to observe the area for illegal activity. The agents saw a fifty-foot boat, the "Miss Deb," tied in back of the house, but no incriminating activity.

McAndrews, Bruckner, and Heitschmidt walked to the front of the house at 714 Northeast 20th Avenue, and, as McAndrews started to knock on the door, he heard voices coming from the garage. With his ear to the garage door, McAndrews heard the sound of material being torn and a person saying, "[t]his looks like good stuff."

After leaving the premises, McAndrews ordered Bruckner and Heitschmidt to maintain surveillance of the house while he radioed for "backup" officers. Upon arrival of the backup officers, Agent Slick observed four men standing in the driveway of the house. Agent Slick could not tell whether these were the same men heard talking in the garage. When the four men went inside the house, the agents proceeded to the rear of the property. At the rear of the house, Agent McAndrews shouted at the men to come outside, displayed his badge, and identified himself as a Customs agent. As the agents watched, one of the four men "bolted" out of sight. The other three men came out of the house. The man who "bolted" out of sight was later identified as Kevin Pritchett. Although never apprehended, he was tried and convicted in absentia. The three men who came out of the house were William Sanders, Robert Rackley (appellant), and Randall T. Crosby (appellant).

When asked who owned the property, Sanders identified himself as the lessee. McAndrews asked if he could look inside the house for the man who had run away; Sanders said, "yes." McAndrews drew his weapon and, accompanied by Sanders, walked through the rooms of the house looking for the man later identified as Kevin Pritchett. When they reached the kitchen, McAndrews observed a door leading to the garage. McAndrews asked Sanders if the man could be in the garage. Sanders replied that he did not know, but agreed that the agent could look inside if he wished. Upon entering the garage, McAndrews first noticed an air conditioning unit with an alcove located behind it. No one was in the alcove.

Immediately thereafter, however, McAndrews noticed a strong acidic smell which he recognized to be the smell of cocaine. The odor came from two large plastic bags resting on a washing machine. When McAndrews asked Sanders what was in the bags, Sanders asked to see the agent's warrant. McAndrews then asked whether the "coke" belonged to Sanders; Sanders again asked to see the agent's warrant. At this point, McAndrews and Sanders went back outside, and Sanders, Rackley, and Crosby were placed under arrest. The arrest occurred prior to 2 p.m. Other DEA agents then secured the house while a search warrant was being obtained.

While the warrant was being prepared, McAndrews directed Sanders, Rackley, and Crosby to remove their shirts. Another agent, not realizing that the purpose for obtaining the shirts was to analyze them for drug residue, put all three shirts in the same paper bag.

---

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.] 21 U.S.C.A. § 846. Attempt and conspiracy
Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

Officers obtained a search warrant at approximately 9 p.m. Other agents arrived at the premises, accompanied by a specially trained narcotics detection dog. The dog, "Biff," was allowed to sniff around the driveway and house. "Biff" alerted to plastic bags of clothing containing traces of cocaine in a flat-bed pickup truck parked in the driveway. "Biff" also alerted to the trunk of a Lincoln Continental automobile parked near the pickup truck. When agents opened the trunk of the automobile, they found three blue suitcases stacked upon one another. The agents obtained another search warrant for the three suitcases. After obtaining the second search warrant, the agents opened the suitcases and found each one filled with cocaine. The agents seized a total of 260 pounds of cocaine from the house and vehicles.

Sanders, Rackley, and Crosby moved to suppress introduction of the cocaine and all physical evidence obtained by the search. At the suppression hearing, in an effort to establish Rackley's standing to contest introduction of evidence obtained during the search, Sanders testified that Rackley was a friend who often stayed in the house. He asserted that Rackley had a key, as well as the right to exclude others from the house. The government established on cross examination, however, that Rackley did not store items in the house when he was not in town, and that he only slept in the guest room. Further, the government elicited cross examination testimony establishing that Rackley had not stayed at the house the night before the raid. The district court denied the motions to suppress.[2]

At trial, the government agents testified that Rackley appeared to be very nervous when he came out of the house. They assumed he was nervous because he had a problem opening a can of soft drink. The government also placed into evidence a copy of the pickup truck's registration certificate, reflecting that the truck was registered to Rackley. Rackley called as a witness a forensic chemist who testified that, in his opinion, the cocaine found in trace amounts on the three shirts did not come from the cocaine found in either the pickup truck or the Lincoln Continental. The government then offered rebuttal testimony by a DEA chemist who explained that the cocaine found on the truck and in the Lincoln Continental could not validly be compared to the cocaine found on the clothing, because the cocaine found on the clothing had been exposed to contaminants such as moisture and heat. During the redirect examination of "Biff's" handler and trainer, the government conducted an in-court demonstration of "Biff's" ability to alert to drugs.

After testifying at the suppression hearing, Sanders failed to appear at trial. His bail was forfeited, and he was tried in absentia. All three defendants were convicted on both counts. Sanders's appeal was dismissed in November, 1982. Rackley and Crosby have raised on appeal the issues discussed below.

## II. ISSUES

The four main issues raised on appeal are: (1) whether the district court properly denied the appellants' motion to suppress evidence; (2) whether the evidence was sufficient to convict appellants Rackley and Crosby; (3) whether the district court abused its discretion in permitting a live demonstration before the jury; and (4) whether the district court properly instructed the jury on circumstantial evidence.

### A. Suppression of Evidence

Appellants, Rackley and Crosby, contend that the district court erred in denying their motion to suppress the seized cocaine, as well as the "trace" amounts of cocaine

---

**2.** The district court ruled that the search of the house was conducted pursuant to valid consent given by Sanders. Additionally, upon a motion by Sanders to suppress evidence of the cocaine seized from the Lincoln Continental, the district court asserted, "There is no standing. I don't believe that man. I don't believe a thing he said. I don't believe Mr. Sanders at all. I don't believe a thing in the world he said. He does not have standing, period, and I find the search was legal anyhow." Sanders had testified that he had exclusive use of the Lincoln, but that "a guy named Alex" gave it to him registered in somebody else's name.

found on their shirts. They assert that the evidence should be suppressed because they were subjected to an illegal detention and arrest without probable cause. They assert that the warrantless search of the house was illegal, as was the sampling and testing of the substance taken from the bags located in the garage. Moreover, Crosby and Rackley insist that neither of them ever exercised any dominion or control over the narcotics or the premises where they were found. In the alternative, they argue that the only nexus between them and the cocaine is that they were present when the cocaine was found.

The government asserts that the appellants' motion to suppress was properly denied because neither appellant had an expectation of privacy in either the house, garage, or Lincoln Continental. Further, the United States argues that the initial search was conducted pursuant to the valid consent of Sanders, the lessee.

■ A person challenging the constitutionality of a search must show that he possesses a legitimate expectation of privacy in the premises searched or the items seized. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Long*, 674 F.2d 848, 852 (11th Cir.1982); *United States v. Richards*, 638 F.2d 765, 769 (5th Cir.), *reh'g denied*, 646 F.2d 962, *cert. denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981). A defendant's fourth amendment rights are violated only when the challenged conduct invades that party's legitimate expectation of privacy rather than the expectation of privacy of a third party. *United States v. Payner*, 447 U.S. 727, 731, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468 (1980).

■ The evidence shows that neither Crosby nor Rackley had a legitimate expectation of privacy to afford them standing to contest the search of the house. In *United States v. Meyer*, 656 F.2d 979 (5th Cir. 1981), the Fifth Circuit stated that:

> [w]hile an ownership or possessory interest is not necessarily required, the mere legitimate presence on the searched premises by invitation or otherwise, is

insufficient in itself to create a protectible expectation. A defendant must also establish a legitimate expectation of privacy *in the particular area searched* in order for a fourth amendment challenge to be allowed.

*Meyer*, 656 F.2d at 981. (emphasis added) (citations omitted). The evidence elicited at the suppression hearing clearly establishes that Rackley and Crosby were mere guests on the premises leased by Sanders. While one's status as a guest does not necessarily exclude one from an expectation of privacy in the searched premises, the ability to object to a search is ordinarily limited to only those persons whose privacy is invaded by the search. *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973). Neither Rackley's nor Crosby's privacy was invaded by the search conducted at the house. Neither man had any valid expectation of privacy in either the garage, the plastic garbage bags obtained from the garage, the house itself, or the Lincoln Continental automobile parked in front of the house.

At the suppression hearing, Sanders asserted that Rackley had a key to the house and that he stayed there several times during the month of June. Sanders admitted, however, that Rackley did not stay in the house immediately preceding the search and seizure, and never kept a full wardrobe in the house when he was there. This testimony suggests that Rackley's expectation of privacy, if it existed at all, was limited to the guest bedroom where he stayed, whenever he stayed there. Since no evidence was seized from the guest bedroom, Rackley's expectation of privacy in that guest bedroom is of no legal consequence. Appellant Crosby, who never stayed overnight, does not possess even a possibility of a valid privacy expectation in the house.

■ Although Rackley and Crosby had no standing to contest a search of the above premises, we find that the search was conducted pursuant to Sanders's valid consent. The only restraint on a validly

authorized search, one conducted pursuant to consent or upon issuance of a warrant, is that the scope of the search be limited to the terms of its authorization. *Walter v. United States,* 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). We recognize, however, that a search conducted pursuant to a coerced consent is not valid because the consenting party is forced to allow the search. *See United States v. Elsoffer,* 671 F.2d 1294 (11th Cir. 1982) (a detention does not escape fourth amendment strictures merely because an individual who felt he had no alternative to compliance mouthed pro forma words of consent).

Sanders testified at the suppression hearing that he was coerced into giving the DEA agents access to his house because McAndrews held a gun to his head.[3] The evidence establishes that Sanders told the agent he leased the residence, had access to all the rooms, and that they could look through the house in order to find the man who had run away. Upon evaluating the credibility of the testifying agents and Sanders, the district judge found that Sanders had given consent to search the house and garage. This factual finding is not clearly erroneous and should not be disturbed.

 In addition, we refuse to consider the contention that the initial search of the premises was invalid because the DEA agents acted without authority when they walked into the backyard of the house prior to obtaining Sanders's consent. The DEA agents were Customs Officers empowered by statute to board and search any vessel subject to the fourth amendment "reasonableness" requirement.[4] *See U.S. v. Freeman,* 579 F.2d 942, 945 (5th Cir.1978). It was reasonable for the officers, having been apprised of an on-site drug offloading operation, and having heard the words "this looks like good stuff" coming from the garage, to suspect that there was contraband aboard the "Miss Deb." It was reasonable for the agents to enter the backyard in order to reach the boat and effectuate a search of the area.

### B. Sufficiency of Evidence

Rackley and Crosby contend that the district court erred in refusing to grant a judgment of acquittal in light of the insufficiency of the evidence against them. The test for determining whether a district court erred in refusing to grant a judgment of acquittal is that expressed in *United States v. Bell,* 678 F.2d 547, 549 (11th Cir.1982) (en banc):

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. [Footnote omitted.]

 Mere presence in an area where unlawful drugs are discovered is insufficient to support a conviction for drug possession. *United States v. Rojas,* 537 F.2d 216, 220 (5th Cir.1976). Constructive possession of contraband will sustain a conviction for possession with intent to distribute

---

**3.** Sanders's testimony includes, in pertinent part:

> Sanders: I [didn't] see McAndrews, because he was up close to the door. When he ordered us to come out, he had his badge and his gun, and when he came out, he hollered for the other individual to come out, and he asked me was anybody else in the house. I said no.
> That is when he grabbed me, grabbed me by the shoulder.
> He said, 'Let's go in and see,' and that's when we went in.
> He had the gun at the back of my head, and by my shoulder.

THE COURT: He had the gun at the back of your head?
THE WITNESS: Like this, you know, right up to my skull. Not up to my skull, Your Honor, but he had the gun out like this, and it was like this.

**4.** Title 19 U.S.C.A. § 1581(a) states, in pertinent part, that:

> Any officer of the customs may at any time go on board any vessel or vehicle at any place in the United States ... and examine, inspect, and search the vessel or vehicle and every part thereof ....

pursuant to section 841(a)(1). *See United States v. Hernandez*, 484 F.2d 86, 87 (5th Cir.1973). It is, however, essential that there exist some nexus between the accused and the contraband. Mere physical proximity to the unlawful drug is not in itself sufficient to establish either actual or constructive possession of the prohibited substance. *See United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir.1973).

■ Neither Rackley nor Crosby had actual possession of the cocaine. Moreover, neither had control or dominion over the premises at 714 Northeast 20th Avenue sufficient to establish constructive possession. Rackley, however, did have dominion and control over the pickup truck which was registered in his name. Rackley's presence at the site where large quantities of cocaine were found and his dominion and control over traces of cocaine found on the clothing in his truck are sufficient to sustain a conviction for possession of a controlled substance with intent to distribute.

The evidence presented against Crosby, however, only establishes that he was present at the site when the cocaine was found. There is no connection between Crosby and the contraband as exists with Rackley and Sanders. There is no evidence that Crosby was in the garage when the "good stuff" conversation took place. Crosby's shirt, kept for several days in a bag with Rackley's and Sanders's shirts, contained cocaine residue, but this proves nothing. Because the shirts were put in one bag, no way exists to ascertain whether the cocaine residue on one shirt may have contaminated the other two shirts. The shirt evidence is insufficient to sustain Crosby's conviction as to possession.

■ To convict on the conspiracy count, proof beyond a reasonable doubt must show that the conspiracy existed, that the accused knew of it, and that, with knowledge, the accused voluntarily became a part of it. *United States v. Bland*, 653 F.2d 989, 996 (5th Cir.1981). There is no evidence to support a conspiracy conviction against Crosby. Nothing is asserted except that Crosby was present at the place

where the cocaine was found. Rackley, on the other hand, possessed traces of cocaine on clothing in his pickup truck. From such possession, it is reasonable to infer that he entered into an agreement with Sanders to distribute this cocaine. The evidence beyond a reasonable doubt establishes a conspiracy between Rackley and Sanders.

### C. Abuse of Discretion

Crosby and Rackley contend that the district court abused its discretion in allowing the government to present before the jury a demonstration of how "Biff", the narcotics dog, sniffed out cocaine hidden in closed containers.

■ Generally, a trial court has broad discretion regarding experiments it will allow in the presence of the jury. *Booth v. Garan, Inc.*, 476 F.2d 591, 592 (5th Cir.1973). In the instant case, the trial court originally denied the government's request for a demonstration of "Biff's" abilities to sniff out cocaine. During cross examination of the dog's handler, however, Rackley's attorney questioned whether the dog actually had the ability to sniff out drugs. The matter having been introduced during cross-examination, the district court ruled that the dog's handler, on redirect examination, could conduct an experiment during which the dog would attempt to sniff out cocaine hidden in several containers. Under such circumstances, no abuse of discretion is shown.

### D. Jury Instructions

■ The trial judge instructed the jury on circumstantial evidence, stating:

There are two kinds of evidence which a jury may properly find a defendant guilty of a crime. One is direct evidence, such as the testimony of an eyewitness, evidence of those persons who have senses, eyes, ears, and so forth.

The other is circumstantial evidence. The proof of a chain of circumstances pointing to the commission of an offense.

As a general rule, the law makes no distinction between direct and circum-

stantial evidence, but simply requires before convicting a defendant, the jury must be satisfied that the defendant is guilty beyond a reasonable doubt from all the evidence in the case. . . .

Proving a case by circumstantial evidence is like identifying the criminal by the tracks he left behind. Proof of the facts would show the criminal. These facts may be very plain, they may be very clear, so clear as to leave no reasonable doubt.

On the other hand, they can be very weak, very obscure, so as to leave a reasonable doubt.

To use a common illustration, if you are tracking an animal in the snow, or in the earth that is moderately soft, and yet tenacious enough to retain an impression, you can know with reasonable certainty if you see a track in the snow or in the ground, whether or not it is a cow track or a horse track, if you know those animals and the tracks it leaves and where there is a clear impression on the ground or snow.

You did not see the animal pass, and yet there is a clear track which identifies the animal or lets you know with reasonable certainty, as reasonable minded people, that such an animal passed that way a short time before.

On the other hand, the track may be very obscure, the ground may be too hard, or too soft, or the track is washed out in the soft mud or maybe obscured by the track of some other animal, and although you know the difference between the horse track and a cow track, you are unable to tell from the track which animal passed.

So it is in the criminal law. The track which the criminal left, if circumstantial evidence is relied upon, may be so clear and distinct as to point beyond a reasonable doubt as to the guilt.

On the other hand, it may be so obscure and faint that it does not identify the criminal beyond a reasonable doubt.

If the facts that have been proven point to the guilt of the defendants so clearly that they make out his guilt beyond a reasonable doubt, it would be the duty of the jury to bring back a verdict of guilty, even though the evidence may be circumstantial only.

On the other hand, if the facts do not point to the guilt of the defendants, or they point so vaguely that there is some reasonable doubt of it, then such facts are not sufficient to warrant a verdict of guilty.

It all comes back to a question of reasonable doubt.

Rackley and Crosby contend that the trial judge's instructions on circumstantial evidence were erroneous because they were confusing, misleading, and improper. The trial judge began his instructions by correctly charging the jury that the law recognizes both direct and circumstantial evidence, and that it makes no distinction as to the weight to be given either. The trial judge correctly informed the jury that proof of a crime may be established solely through circumstantial evidence as long as the jury is not left with a reasonable doubt as to the guilt of the accused. In determining the correctness of a judge's instructions to the jury, an appellate court should examine the entire charge and determine whether it properly presented the issues and law. *United States v. Abravaya*, 616 F.2d 250, 251 (5th Cir.1980). The trial judge's instructions properly presented the issues and the law.

### III. CONCLUSION

Accordingly, we hold that (1) the district court did not err in denying appellants' motion to suppress physical evidence because neither Rackley nor Crosby had standing to contest the search at the house; and, in any event, the agents obtained valid authorization for the search through Sanders's voluntarily given consent and the subsequent warrants; (2) that the district court did not err in denying Rackley's motion for a judgment of acquittal from his possession and conspiracy convictions, but did err in denying Crosby's motion because there was insufficient evidence to sustain either conviction against Crosby; (3) that

the district court did not abuse its discretion in allowing the government, in response to the cross-examination testimony elicited by Rackley's counsel, to present an in-court demonstration of the narcotics dog's ability to sniff out cocaine; and (4) that the trial judge's jury instructions were proper with respect to circumstantial evidence. Rackley's convictions are affirmed; Crosby's convictions are reversed.

**AFFIRMED IN PART; REVERSED IN PART.**