**UNITED STATES of America**

v.

**Gary A. GREENOUGH.**

**Crim. No. 84–00097.**

United States District Court, S.D. Alabama, S.D.

April 18, 1985.

whether the letters were mailed.

---

**12.** In light of our holding, we need not decide whether there is a genuine issue of fact about

J.B. Sessions, U.S. Atty., Mobile, Ala., for plaintiff.

E.B. Ball, Bay Minette, Ala., for defendant.

## ORDER

HAND, Chief Judge.

This cause came before the Court on defendant Gary A. Greenough's motion for bail pending appeal. Greenough was convicted on all counts of a fourteen count indictment charging him with the following violations of the United States Code: aiding and abetting George Juzang and David Gwin to commit mail and wire fraud in violation of 18 U.S.C. §§ 2, 1341, and 1343; conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371; and violation of the Hobbs Act, 18 U.S.C. § 1951. Following his conviction, Greenough was sentenced to a term of imprisonment of twenty-five (25) years, and received a substantial fine. After reviewing defendant's motion, and for reasons stated below, the Court has concluded that the motion is due to be DENIED.

As a preliminary matter, the Court notes that in his original motion for bail pending appeal, Greenough challenged the constitutionality of 18 U.S.C. § 3143(b) (the Bail Reform Act of 1984), as well as asserting in the alternative that he was entitled to bail under the terms of the statute. In his brief filed several weeks after the motion, the defendant does not address the constitutionality of the Bail Reform Act, but instead limits his argument solely to the question of whether he is entitled to bail pending appeal under the terms of the statute. The Court therefore concludes that the defendant has abandoned his constitutional challenge, and addresses itself solely to the merits of the question of whether the defendant is entitled to bail pending appeal under the terms provided for by the Bail Reform Act.

### I.

Title 18, Section 3143(b) of the United States Code provides:

The judicial officer [of a court of original jurisdiction over an offense, or of a Federal appellate court] shall order the person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

(1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the community or any person if released pursuant to sections 3142(b) or (c); and

(2) that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

If the judicial officer makes such findings, he shall order the release of the person in accordance with the provisions of section 3142(b) or (c).

Thus, a court must find four factors before granting bail pending appeal. First, the Court must find that the defendant is not likely to flee, and does not pose a danger to the safety of any person or to the community. Second, the Court must conclude that the appeal is not for purpose of delay. Third, the appeal must raise a substantial question of law or fact. Fourth, the Court must conclude that if the substantial question is determined favorably to the defendant on appeal, that decision is likely to

result in reversal or an order for a new trial of *all* counts on which imprisonment has been imposed. *United States v. Giancola,* 754 F.2d 898, 901 (11th Cir.1985). The burden of establishing these factors is on the convicted defendant. *Id.*

As to the first factor, this Court previously found at the hearing on bail pending sentencing that the defendant was not a danger to the community or to any person and that he was not likely to flee. The Court sees no reason to change that determination.

The second factor requires an inquiry into whether the purpose of the appeal is for delay. The Court concludes that the appeal is not taken for delay.

The third factor requires the Court to determine whether a substantial question of law or fact has been raised. In *United States v. Giancola, supra,* at 900, the Eleventh Circuit adopted the reasoning of the Third Circuit Court of Appeals decision in *United States v. Miller,* 753 F.2d 19 (3d Cir.1985). In *Miller,* the Third Circuit held that a substantial question "... is one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *Id.* at 23. The Third Circuit further explained that the fourth factor, that is, "the likely to result in reversal" language

> must be read as going to the significance of the substantial issue to the ultimate disposition of the appeal. A question of law or fact may be substantial but may nonetheless, in the circumstances of a particular case, be considered harmless, to have no prejudicial effect, or to have been insufficiently preserved. A court may find that reversal or a new trial is "likely" only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.

*Id.*

With these definitions in mind, the Court now addresses itself to the issues which the defendant has stated he will raise on appeal.

## II.

Defendant raises three issues. First, he asserts this Court's order denying his motion for recusal is erroneous. Second, he claims the Court made two comments during the trial which were so prejudicial to the defendant that he is entitled to a new trial. Third, he argues that the Court committed error when it failed to grant his motion for a directed verdict.

■ Considering the claims in reverse order, the Court concludes its denial of the motion for a directed verdict fails to raise a substantial question. "The test for determining whether the district judge erred in refusing to grant a motion for acquittal is whether, considering the evidence in the light most favorable to the Government, reasonable persons might find the evidence inconsistent with every reasonable hypothesis of innocence." *United States v. Rackley,* 724 F.2d 1463, 1469 (11th Cir.1984), *quoting United States v. Sanders,* 639 F.2d 268, 270 (5th Cir.1981).

■ The indictment alleges that the defendant was guilty of conspiring with Gwin and Juzang and others to violate the mail and wire fraud statutes. It is well established that

> [t]he elements of a conspiracy under 18 U.S.C. § 371 are: (1) an agreement between two or more persons, (2) an unlawful purpose, and (3) an overt act committed by one of the conspirators in furtherance of the conspiracy.... The existence of a conspiracy may be established through direct evidence or through inference. As stated by this court in *United States v. Mulherin* :
>
> > While mere presence or association with others involved in a criminal scheme is not sufficient to prove participation in a conspiracy, the essential elements of a conspiracy can be proved by inference from the actions of the parties or by circumstantial evidence. Direct evidence of an agreement to

join a criminal conspiracy is rare, so a defendant's assent can be inferred from acts furthering the conspiracy's purpose. The government is not required to prove that each alleged conspirator knew all the details of the conspiracy; it is enough to establish that a defendant knew the essentials of the conspiracy.

710 F.2d 731, 738 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1305, 79 L.Ed.2d 703 (1984) (citations omitted). *United States v. Perkins*, 748 F.2d 1519, 1527 (11th Cir.1984). The Government must establish that "the defendant knew of the conspiracy, and that the defendant intended to join or associate himself with the objective of the conspiracy." *United States v. Gold*, 743 F.2d 800, 824 (1984). It must be shown that the defendant was aware of the "essential nature and scope of the criminal enterprise, although it is not necessary that the individual members of the conspiracy know all the details of its operations." *Id.* Finally, "[a] defendant may be found guilty of conspiracy even if he did not join it until after its inception, and even if he played only a minor role in the total scheme." *United States v. Clark*, 732 F.2d 1536, 1539–40 (11th Cir.1984).

■ It is clear that the Government presented sufficient evidence to send this case to the jury. In its case in chief, the United States presented evidence from which a jury could find or infer that there was a conspiracy, that its purpose was to defraud the City of Mobile, artists, performers and agents of monies due them, and that numerous overt acts were committed by one of the conspirators in furtherance of the conspiracy. There was also

evidence to indicate that Greenough knew of the conspiracy and actively participated in and benefited from it. In particular the evidence showed that Greenough was the City of Mobile's Finance Commissioner, was aware generally of the nature of the operations at the auditorium, (although he may not have known the exact nature of the skimming operation, i.e., double billing) that he received funds that he knew were being illegally siphoned off from the auditorium, and that he had been receiving funds from as early as the middle or late 1970's. Other evidence was presented from which it could have been inferred that he actively participated in an attempt to prevent an investigation into irregularities at the auditorium (the James incident) so as to cover up the activities of Gwin and Juzang, protecting both them and himself. There was overwhelming testimony showing that Gwin and Juzang furthered this scheme by use of the mails and by various wire communications. Under the test of *United States v. Rackley*, 724 F.2d at 1469, it is clear that the Government met its burden, and that the defendant's motion for directed verdict was properly denied.[1]

■ Similarly, the defendant has failed to establish a "substantial" question on the five aiding and abetting counts. Those counts allege that the defendant aided and abetted Gwin and Juzang and others to violate 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud). "In order to be convicted of aiding and abetting, a defendant must associate himself with the venture, participate in it as something he wishes to bring about, and seek by his action to make it successful." *United*

---

1. Treating this issue as a claim that there was insufficient evidence to convict, the same holding would result. The test for reviewing the sufficiency of the evidence to support a conviction is whether in viewing the evidence and the inferences that may be drawn from it in a light most favorable to the Government, a reasonable trier of fact could find the evidence establishes guilt beyond reasonable doubt. *United States v. Carrodeguas*, 747 F.2d 1390, 1396 (11th Cir. 1984). There was clearly sufficient evidence under this standard to convict.

The defendant's directed verdict claim, or a claim or insufficiency of the evidence, should not, in this Court's opinion, normally be considered a "substantial" question under the Bail Reform Act. If that were the case, then any time a defendant moved for a directed verdict or stated that he would raise a sufficiency question on appeal, he would be entitled to bail. This Court is of the opinion that he would have to establish a "substantial" question by clearly showing the lack of evidence on an element of the offense, or some similar fault with the Government's case in chief.

*States v. Carter,* 721 F.2d 1514, 1533 (11th Cir.1984). It is the burden of the Government to "... show that the accused shared in the principal's criminal intent as to all the necessary statutory elements of the offense." *United States v. Kriesser,* 731 F.2d 1509, 1516 (11th Cir.1984). Direct or circumstantial evidence may be used to prove the essential elements of aiding and abetting.[2] *United States v. Pantoja-Soto,* 739 F.2d 1520, 1525 (11th Cir.1984). In *United States v. Brantley,* 733 F.2d 1429, 1435 n. 9 (11th Cir.1984), the court stated:

> The aiding and abetting requirement of shared intent between the aider and abettor and the principal, sometimes referred to as the "community of unlawful intent," *see, e.g.; United States v. Austin,* 585 F.2d 1271, 1277 (5th Cir.1978), is similar to the requirement in conspiracy cases that there be an "agreement". However, shared intent need not rise to the level of agreement. *United States v. Cowart,* 595 F.2d 1023, 1031 (5th Cir. 1979). The fact that here [defendant] and [co-conspirator], although not charged with conspiracy, were almost certainly conspirators in fact, emphasizes the strength of "the community of unlawful intent" between [the defendants].

And where a defendant has conspired in a scheme to defraud others, a jury could find that he expected and encouraged the individual communications which constituted the substantive offenses, and would make the defendant an aider and abettor under the substantive counts. *United States v. Owen,* 492 F.2d 1100, 1104 (5th Cir.1974), *cert. denied,* 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180, and *cert. denied* 419 U.S. 1019, 95 S.Ct. 493, 42 L.Ed.2d 292.[3]

■ Under the evidence presented at trial, it is clear that the defendant associated himself with Gwin and Juzang, participated in and benefited from the defrauding of the auditorium, and sought by his actions to make it successful, particularly in attempting to protect the schemes from discovery and by aiding Gwin and Juzang in the formation of their own promotion firm. The evidence also showed that the defendant was the Finance Commissioner of the City of Mobile, and was aware of the operations of the auditorium. A jury could infer that he was aware of the fact that auditorium bookings were accomplished by mail and wire communications, and therefore a jury could find that he expected and encouraged the individual communications which constituted the substantive offenses. *United States v. Owen, supra.* Thus, there was more than sufficient evidence to establish that the defendant was a member of a "community of unlawful intent" and that he expected communications by wire and mail which were calculated to defraud talent, agents and the City of Mobile.

■ The Court, having concluded that the defendant has failed to raise a "substantial" question on the conspiracy, mail fraud and wire fraud convictions, need not address the issues on the Hobbs Act convictions, because even if defendant were to prevail on appeal on the Hobbs Act issues, he would still be required to serve the sentences imposed under the conspiracy, mail fraud and wire fraud convictions. *United States v. Giancola, supra,* at 901; *United States v. Miller,* 753 F.2d at 24 (a favorable appeal must result in reversal or order for a new trial on all counts upon which imprisonment has been imposed).

■ Nevertheless, the Court will add this. Greenough's assertion that the Government had to prove that Juzang and Gwin were in fear of the defendant in order to sustain the Hobbs Act convictions is

---

2. Defendant Greenough's acceptance of the fruits of the crime, i.e., payoffs from Juzang and Gwin generated through the skimming operation, is evidence of his intent to aid and abet in the conspiracy, wire and mail fraud counts. *United States v. Hurley,* 755 F.2d 788, at 790 (11th Cir.1985).

3. "For purposes of the mail fraud statute, one 'causes' the mails to be used when one commits an act with knowledge that the use of the mails will follow in the ordinary course of business, or where one can reasonably foresee such use, even though it may not actually be intended." *United States v. O'Malley,* 707 F.2d 1240, 1246 (11th Cir.1983).

**1096**

incorrect. Greenough was a public official. Proof of threat, fear or duress is not required where a public official is involved, because "[t]he coercive nature of the official office itself provides that necessary inducement, taking the place of fear, duress or threat.... There is no need for a showing of fear in order to sustain a conviction of extortion by a public official...." *United States v. Glass,* 709 F.2d 669, 674 (11th Cir.1983), *reh.* and *reh. en banc; United States v. O'Malley,* 707 F.2d 1240, 1248–49 (11th Cir.1983); *United States v. Williams,* 621 F.2d 123, 124 (5th Cir.1980), *cert. denied* 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981).

■ Defendant's claim that no *quid pro quo* was involved between Gwin and Juzang is also without merit. The obvious *quid pro quo,* assuming one is necessary under the Government's theory in this case, is that Greenough got money for his election campaigns and personal benefit, and Gwin and Juzang received peace of mind, future security in their jobs, the ability to carry on their skimming operation, and protection from Greenough (the James incident). For example, in other counts the president of Southeast Wrestling (the victim) testified that he made contributions to Greenough's campaign in order to insure flexibility of dates, and also received kickbacks from Gwin and Juzang. As for the Roach Prufe incidents, Greenough "extorted" money from the City of Mobile through Gwin and Juzang, which was given to Gary Cooper's wife in the form of a purchase of unneeded materials. A jury could infer that Greenough did this to help insure the continued political support of Cooper, a longtime political ally, and an admittedly politically influential figure in the City of Mobile's Black community.

Even so, under the Government's theory, Greenough was charged with extortion through color of his office to induce the giving of benefits to him to which neither he nor his office would otherwise be enti-

tled. There is a question as to whether under such a theory a traditional *quid pro quo* is required. *See United States v. Margiotta,* 688 F.2d 108, 133 (2d Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282; *United States v. O'Grady,* 742 F.2d 682, 687 (2d Cir.1984); *United States v. Trotta,* 525 F.2d 1096 (2d Cir. 1975), *cert. denied* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794; See also the discussion of the *Trotta* case in *United States v. Dozier,* 672 F.2d 531 (5th Cir.1982), and the Court's discussion of *United States v. Glass, United States v. O'Malley* and *United States v. Williams, supra.*

■ Based on the above, the Court concludes that the defendant's asserted errors on the Court's ruling on his directed verdict fail to raise a substantial question, because the issues involved are not novel, are subject to controlling precedent, and are not doubtful. That is, this cause was properly sent to the jury for its consideration because the Government did introduce sufficient evidence, based upon the law as discussed above to create a jury issue. The evidence presented was inconsistent with every reasonable hypothesis of innocence. *United States v. Rackley,* 724 F.2d at 1469.[4]

■ The Court also concludes that the two comments made by the Court, which the defendant claims were prejudicial and which entitle him to a new trial, fail to raise a substantial question. In the alternative, if the comments do constitute error, the Court concludes they are not likely to lead to a reversal or a new trial.

The incident involving the Court's statement that Greenough had made inconsistent statements is discussed wholly out of context. First, the comment was made during an exchange involving the prosecutor's attempt to cross-examine the defendant. Counsel for the defendant objected to the line of cross-examination, and the Government asserted it had the right to go

**4.** The defendant's Hobbs Act claims would also fail under an attack on the sufficiency of the

evidence. See footnote 1, *supra.*

into the subject matter because the defendant had made inconsistent statements. There was further argument, and the Court ruled that the defendant had made inconsistent statements, and allowed the line of cross-examination to continue. The defendant moved for a mistrial, which motion was overruled. The Court then gave a curative instruction, informing the jury that under Federal law, a judge may comment on the evidence, but that the jury was the sole judge of the facts, was not bound by the Court's comments, and it was to take the facts as it remembered them. Similar instructions were given to the jury during the Court's jury charge at the close of trial.

In determining whether a substantial question has been raised, or whether a new trial required, it is important to remember that "a judge's comments must be studied in the context of the entire proceeding and only if, taken as a whole, these comments 'are so prejudicial as to amount to denial of a fair trial' will the constitution require a new trial." *See Allen v. Montgomery*, 728 F.2d 1409, 1415–16 (11th Cir.1984), *quoting United States v. Preston*, 608 F.2d 626, 636 (5th Cir.1979), *cert. denied* 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980).

Under these circumstances, including massive evidence of the defendant's guilt, the Court concludes the defendant was not denied a fair trial. First, since the defendant had made prior inconsistent statements, there was no error in making such a statement within the context of an evidentiary ruling. *See, e.g., United States v. Klusman*, 607 F.2d 1331, 1334–35 (10th Cir.1979). Second, the jury was given a cautionary instruction on two occasions.[5] Finally, although it is true that jurors might attribute great weight to judicial comments, *Allen v. Montgomery*, 728 F.2d

at 1415, it is also true that courts presume that jurors follow their instructions. See, e.g., *Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 853 n. 6, 74 L.Ed.2d 646 (1983); *Parker v. Randolph*, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979); *Adams v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir.1983).

█ The defendant also claims that the Court committed reversible error when it made a "statement" during a "pause" in the course of the direct examination of David Gwin. The defendant alleges that the statement or comment was made in the form of a question by the Court to David Gwin: "So, in other words, Mr. Gwin, what you are telling us is that the defendant gave you a license to steal." The Court has reviewed recently completed, but unedited portions of the transcript, and has been unable to find any such statement in the transcript.

The Court did find a question at the end of the second redirect (page 1050, unedited transcript), in which it asked, "Mr. Gwin, do I understand from your testimony that the city gave little or no supervision to your and Mr. Juzang's operation at that point?" And Gwin responded, "I think that the operation was totally Mr. Juzang's and myself with practically no influence as far as direct control from the Finance Department at all." The Court has been informed by the court reporter that it did say, in denying the defendant's motion for a directed verdict, that the jury could find that the defendant had given Gwin and Juzang a license to steal, and they had exercised it. That statement was, however, made out of the presence of the jury.

Based on the Court's review of the transcript, and having no present recollection

---

**5.** In *United States v. Hope*, 714 F.2d 1084, 1088 (11th Cir.1983), during jury deliberations a judge, in response to a jury question, commented on the evidence, but also gave an instruction warning the jurors that, although he was allowed to comment on the evidence, his comments did not constitute evidence, and a jury was to rely on its own recollection of the

evidence presented. The Court of Appeals affirmed, holding that a trial judge could comment on "the evidence as long as he instructs the jury that it is the sole judge of the facts and that it is not bound by his comments and as long as the comments are not so highly prejudicial that an instruction to that effect cannot cure the error." *Id.*

of when or where any such question was asked, it concludes that the statement alleged by the defendant was not made, and, in the alternative, that the colloquy quoted, which was in the transcript, *supra*, was not prejudicial. Accordingly, the Court concludes the defendant has failed to raise a substantial question on that issue.

Finally, the defendant has asserted that this Court's ruling on his motion to disqualify is erroneous, essentially because this Court denied his motion for a hearing on the disqualification issue. The denial of the motion for a hearing was based on counsel's affidavit, in which he revealed the substance of an *in camera* discussion he had with Alabama Circuit Court Judge Robert Hodnette. The gist of that discussion was that this Court was noncommittal on how Judge Hodnette ought to handle a motion raised in State Court. Based upon that portion of the affidavit, and a reading of the alleged reply of Sandra Baxley Taylor, the Court concluded no hearing was necessary. An analysis of Taylor's statements as alleged indicates they were contradictory: first stating maybe she was there, and maybe she wasn't, then stating the information came from sources. This is not exactly the kind of showing which this Court believes entitles the defendant to a hearing on the disqualification issue. Moreover, the defendant has not pointed to, nor has this Court found, any statutory or case law entitling a party to, or requiring a court to hold a hearing under proceedings pursuant to 28 U.S.C. § 455(a).

As to the merits of the recusal issue, the Court has written to that issue, citing to a case directly on point. *In Re United States*, 666 F.2d 690 (1st Cir.1981). See Order dated November 21, 1984. (Tab 37)

The Court therefore concludes that the defendant has failed to raise a substantial question on the disqualification issue.

Accordingly, it is hereby ORDERED that defendant's motion for bail pending appeal is due to be and is hereby DENIED.