FRANCIS WARD ALLRED *et al.*, Plaintiffs-Appellants and Counterdefendants, v. ALEXANDER SAROVICH *et al.*, Defendants-Appellees and Counterplaintiffs.

First District (3rd Division)   No. 1—90—2144

Opinion filed May 13, 1992.—Rehearing denied July 6, 1992.

Collins & Bargione, of Chicago (George B. Collins and Gregory A. Bedell, of counsel), for appellants.

Arnold & Kadjan, of Chicago (John F. Etzkorn and Charles A. Linn, of counsel), for appellees.

JUSTICE CERDA delivered the opinion of the court:

Plaintiffs, Allred and Century 21—The Investors, brought an action against defendants, Demes and Sarovich, to void their interest in the business and property that the three men jointly owned. Allred claims that the loan transaction to purchase the business and property was illegal. After the close of plaintiffs' case, the trial court entered judgment for defendants, finding that plaintiffs failed to prove illegality. Based on that finding, the trial court entered a preliminary injunction in favor of defendants for an accounting and preventing plaintiff Allred from dissipating or appropriating the business' assets for his own use. On appeal, plaintiff argues that the trial court erred in granting the preliminary injunction on the basis that the loan transaction was not illegal. We reverse.

Plaintiff Allred operated the Century 21—The Investors (the business), a real estate brokerage, with another individual, William Dec, since approximately 1978. Dec was the sole beneficiary of a land trust which held title to the property on which the business was located.

At trial, Allred testified that in January 1985, he and Dec entered into a contract for the sale of Dec's business and property interests to Allred. Allred further testified that shortly afterwards, he met defendant Demes at a Century 21 brokers' function. At that time, Demes and defendant Sarovich jointly owned two Century 21 franchises. In April 1985, Allred approached Demes, who was president and a director of a federally insured savings and loan institution, Capitol Federal Bank for Savings (Capitol), for a loan to purchase the business and property. Demes informed Allred that based on his net worth, Capitol could not make the loan. He suggested, however, that he and Sarovich, who was chairman of the board and a shareholder of Capitol, become involved in the deal to buy the business and property.

In return for half the business and property, Allred testified, they would provide the financing through a line of credit Demes had at Exchange National Bank of Chicago. Allred claims that he, unlike Demes and Sarovich, did not have extensive experience in banking or the savings and loan industry, and had never served as an officer or director at any financial institution.

On cross-examination, Allred stated that the parties had agreed to affiliate the real estate business being acquired with defendants' existing real estate businesses. There was to be joint name recognition, joint advertising, and joint purchasing of the businesses.

Demes testified that he met Allred in late 1984 and discussed the purchase of Dec's interests at that time. Demes also testified that prior to April 1985, Allred filled out and filed with Capitol a personal financial statement to acquire the business and property. After the loan was approved, Allred submitted a loan application. Demes also testified that although Exchange National Bank was mentioned, Allred was aware that Capitol would be the source of the funds.

On May 13, 1985, Dec, Allred, Demes, and Sarovich met with their attorneys to close the sale of the business and property. Allred testified that he entered the closing believing the contract he and Dec signed on January 9, 1985, was the contract to be consummated, but was presented with a new contract, which all parties eventually signed.

Demes testified that Allred participated in the negotiation of the contract signed by all parties and that he did not see Allred's contract with Dec until after the transaction closed. Demes and Sarovich each received a 25% interest in the property and the business while Allred received the remaining 50% interest.

Demes and Sarovich arranged for their savings and loan, Capitol, to provide a $300,000 loan for the purchase of the business and property. The loan documentation indicated that the borrower was a trust under which Allred, Demes, and Sarovich held beneficial interests. Capitol received a mortgage on the property, and Allred personally guaranteed repayment to Capitol.

Demes testified that he was neither named on the loan nor personally guaranteed the loan in order to avoid conflict with Federal Home Loan Bank Board (FHLBB) regulations concerning loans to bank "insiders," including a $100,000 limit on loans to insiders and certain reporting requirements. When Capitol's board of directors approved the loan on April 18, 1985, both Demes and Sarovich abstained from the vote. Demes testified that he and Sarovich disclosed their interest in the loan at that meeting prior to its approval. There

was some evidence that Demes and Sarovich initially disclosed their interest to the FHLBB, although there was no documentation. In 1987, however, after discussions with the FHLBB, they both personally guaranteed the loan and took the loan off the savings and loan's books.

Allred operated the business under the arrangement with Demes and Sarovich until 1987. In approximately March 1987, Allred received a subpoena to give a deposition before the FHLBB in Chicago. After the deposition, Allred ceased doing business with Demes and Sarovich and instituted this suit to void the interests of Demes and Sarovich. He stopped sharing the profits with Demes and Sarovich, unilaterally raised his salary, and borrowed money from the business. Demes and Sarovich counterclaimed for an accounting and other relief related to the business, and filed a motion for preliminary injunction to enjoin Allred from further dissipating the business' funds.

After the close of Allred's case, the trial court entered judgment for Demes and Sarovich, finding that Allred failed to prove illegality. Based on its finding that defendants' interest in the business and property was not illegal, the trial court granted a preliminary injunction, enjoining the business from making any substantial changes in its operations or making any loans or distributions to Allred other than his salary. The directed finding is not being appealed here because it was not a final and appealable order, pending a decision on defendants' counterclaim for an accounting. Plaintiff appealed the preliminary injunction pursuant to Illinois Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307 (a)(1)).

Plaintiffs Allred and Century 21—The Investors (Allred) assert that the trial court erred in granting the preliminary injunction. For a preliminary injunction to be granted, Demes and Sarovich must establish a protectable interest, a likelihood of success on the merits, an irreparable injury in the absence of injunctive relief, and no adequate remedy at law. *American National Bank & Trust Co. v. Chicago Title & Trust Co.* (1985), 134 Ill. App. 3d 772, 776.

Allred's first argument, that the trial court erred in directing a finding against plaintiff, is not properly before this court. While it is true that this court must examine the issues that resulted in both the granting of the preliminary injunction and the directed finding, the directed finding itself is not at issue. The central issue is whether the loan transaction was illegal, and if it was, would that void the purchase contract between Allred, Demes, and Sarovich. We find that the purchase contract is void based on the illegal loan transaction. There-

fore, defendants have no protectable interest, deeming the preliminary injunction improper.

There are two types of violations to be considered: FHLBB regulations (12 U.S.C. §§1467(a), 1468 (Supp. III 1985)) and section 215 (18 U.S.C. §215 (Supp. III 1985)). Plaintiff concentrates on section 215, while defendants rely on the FHLBB regulations. First we consider whether the loan transaction was in violation of the FHLBB regulations.

■ Under the Homeowner's Loan Act (12 U.S.C. §§1467(a), 1468 (Supp. III 1985)), federally chartered savings banks, such as Capitol, "may extend credit for commercial purposes to an affiliated person which may in no event exceed an aggregate of $100,000," provided that the loan "is approved in advance by a majority (with no director having an interest in the transaction voting) of the entire board of directors," after full disclosure, which must include whether the loan is made "on substantially the same terms, including interest rate and collateral, as those prevailing at the time for comparable loans to members of the general public." 12 C.F.R. §563.43(b)(2) (1985).

There was evidence that the loan was issued in conformity with the Federal Home Loan Bank Board regulations. The loan was made to a trust under which Allred, Demes, and Sarovich held beneficial interests. Furthermore, defendants abstained from the vote to grant the loan, disclosed their interest in the loan prior to the loan's approval, and verbally told the bank regulators that they had an interest in the loan.

Furthermore, there was no evidence to suggest that Capitol was not adequately secured in the transaction or that the loan was granted on terms not generally available to the general public. All the evidence demonstrates that the loan was granted at the appropriate interest rate of 1% over prime, that the loan was adequately secured by a mortgage on the property and Allred's personal guarantee, and the loan had been fully repaid.

Although there was sufficient evidence to suggest that defendants did not violate the FHLBB regulations, the trial court incorrectly focused only on the FHLBB regulations without considering whether defendants violated 18 U.S.C. section 215 (1985). Defendants' argument that a bank officer cannot be prosecuted under section 215 if he complies with the FHLBB regulations governing those loans is without merit. They cite no authority nor give any analysis for their contention.

■ Section 215 stated at the time the suit was brought, in relevant part, under the title: "Receipt of commissions of gifts for procuring loans":

"(a) Whoever, being an officer, director, employee, agent, or attorney of any financial institution, *** or savings and loan holding company *** directly or indirectly, asks, demands, exacts, solicits, seeks, accepts, receives or agrees to receive anything of value, for himself or for any other person or entity, other than such financial institution, from any person or entity for or in connection with any transaction or business of such financial institution ***

(b) *** shall be fined not more than $5,000 or three times the value of anything offered, asked, given, received, or agreed to be given or received, whichever is greater, or imprisoned not more than five years, or both." 18 U.S.C. §215 (Supp. III 1985).

The purpose of section 215 is to remove from the bank officials any temptation of self-enrichment at the expense of the borrower or the bank. (*United States v. Jumper* (5th Cir. 1988), 838 F.2d 755, 758.) Numerous Federal court cases have ruled that section 215 is violated when bank officers receive commissions or fees in clear violation of the statute or conceal their interest in the transaction. In *United States v. Humble* (E.D. La. 1989), 714 F. Supp. 794, 798, a borrower paid a loan officer for procuring a loan from the loan officer's bank. The court found section 215 constitutional, stating that a person of ordinary intelligence would reasonably understand that accepting cash commissions for the procurement of loans while acting as a loan officer of a federally insured financial institution is conduct prohibited by section 215. *Humble*, 714 F. Supp. at 798.

In *United States v. Lane* (8th Cir. 1972), 464 F.2d 593, 594, a bank director received a $125,000 commission in return for procuring a loan from the bank where he was a director. In *United States v. Etheridge* (E.D. Va. 1976), 414 F. Supp. 609, 610-11, the defendant was convicted for receiving a $2,000 fee for procuring a loan. In *Jumper*, the conviction was based on receipt of a $100,000 fee, undisclosed to the bank (838 F.2d at 757), and in *United States v. Riley* (5th Cir. 1976), 544 F.2d 237, 239, there was a 15% fee involved. Although a cash payment was not involved in *United States v. Schoenhut* (3d Cir. 1978), 576 F.2d 1010, 1019, the court ruled that the bank officer violated section 215 by receiving stock for procuring the loan.

■ Demes and Sarovich violated section 215 by soliciting and each accepting a 25% interest in the business and property in return for procuring the loan. That violation resulted in their interest in the business and property being void and unenforceable. Although there was consideration from defendants in the form of affiliation with other real estate offices and the benefit of joint advertising and bulk purchasing supplies, defendants' violation of section 215 rendered that consideration moot. If one part of the consideration is illegal either by statute or public policy, the entire agreement is void. *Kilian v. Frazier* (1955), 4 Ill. App. 2d 108, 123.

Since Demes' and Sarovich's interest in the business and property is void, it is not protectable. Therefore, the trial court abused its discretion in granting the preliminary injunction.

The judgment of the circuit court is reversed and remanded for further proceedings.

Reversed and remanded.

RIZZI and TULLY,* JJ., concur.

---

*Justice Tully read the briefs and the record and concurred with this opinion. Justice White heard oral arguments prior to his retirement.